WAUKON AUTO SUPPLY, Appellee,

v.

FARMERS & MERCHANTS SAVINGS
BANK, Waukon, Iowa, Appellant.

No. 88–728.

Supreme Court of Iowa.

May 17, 1989.

James E. Walsh, Jr., and Patrick C. Galles of Clark, Butler, Walsh & McGivern, Waterloo, for appellant.

Marion L. Beatty of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

The manager of Waukon Auto Supply embezzled funds from the business. He did so by first indorsing customer checks either by hand or with the business's rubber stamp. He would then present the checks for cash at the Farmers and Merchants Savings Bank, where Waukon Auto had a checking account. The manager was not authorized to write checks on the account or to withdraw cash.

Waukon Auto sued the Bank for allowing the embezzlement to occur by cashing the checks. Conversion, negligence, and breach of contract were alleged. The district court found that the Bank was liable because under the Iowa Uniform Commercial Code, the Bank was not a holder in due course and had not acted in a commercially reasonable manner. Waukon Auto's recovery, however, was set off against the amount the manager had repaid Waukon Auto.

The Bank has appealed the district court's finding of liability, and Waukon Auto has cross-appealed the court's decision to allow a pro tanto credit. We affirm on the appeal and reverse on the cross-appeal.

I. *Background Facts and Proceedings.*

Waukon Auto Supply employed Gary Rosendahl as its manager from the time the store was opened in 1978. He had been an employee for one year prior to that in another store owned by the same person, Paul A. Anderson.

One of Rosendahl's duties was to indorse customer checks and then deposit them into an account at the Farmers and Merchants Savings Bank. The indorsements were normally made with a rubber stamp containing Waukon Auto's name and address.

Rosendahl was not authorized to write checks on the account or to make cash withdrawals. Only Anderson, the owner of the business, had signed the bank account's signature card. This signature card stated: "Below please find duly authorized signature, which you are requested to recognize in the payment of funds or the transaction of other business on account."

The dispute in this case arose because over a three-year period ending in 1984, Rosendahl cashed customer checks at the Bank and kept the proceeds for himself. Anderson, who only visited his Waukon store occasionally, was alerted to the possible impropriety of Rosendahl's activities by Cindy Barr, Waukon Auto's bookkeeper and only other employee. Anderson himself had apparently never checked his own books against his bank account records.

According to Barr, Rosendahl had instructed her several times to cash customer checks and give him the money. When Anderson learned of this practice, he made inquiries at the Bank. There, he found out that Rosendahl himself had also cashed customer checks, some with only a handwritten indorsement such as "Waukon Auto Supply, by Gary Rosendahl."

Later testimony revealed that the Bank's employees had never checked the signature card of Waukon Auto's account and had

never asked Anderson about Rosendahl's authority to cash checks. Two of the Bank's tellers testified that their normal practice was to allow anyone engaged in business locally to make cash transactions. They also testified that they had never received specific instructions regarding "depository" accounts such as Waukon Auto's. The tellers said that Rosendahl, when cashing checks, had explained that he needed the money for business purchases.

After Rosendahl's misconduct was discovered, he was fired. At that time he gave Waukon Auto $5800 to repay some of the money he had taken.

Waukon Auto sued the Bank for allowing the embezzlement to occur. The petition alleged conversion, negligence, and breach of contract. Though the business claimed about $35,000 in losses, the canceled checks that were cashed at the Bank and that were presented into evidence at trial totaled only $25,160.79.

The district court found that under the UCC, the Bank was not a holder in due course and had not acted in a commercially reasonable manner. As such, the court concluded that the Bank was liable to Waukon Auto for damages. The court, however, deducted from the damage award the amount Rosendahl had repaid Waukon Auto. The court also ruled that Waukon Auto's alleged negligence was not a defense to the conversion claim.

The Bank has now appealed, arguing that the district court erred in ruling that (1) the Bank was not a holder in due course, (2) the Bank did not act in accordance with reasonable commercial standards, and (3) Waukon Auto's allegedly negligent business practices did not provide an affirmative defense.

Waukon Auto has cross-appealed, arguing that the court should not have reduced its damage award by the amount Rosendahl repaid his former employer.

■ As this case is a law action, we review the district court's decision only to correct errors of law. Iowa R.App.P. 4. In such cases, findings of fact have the effect of a special verdict and are binding on us if supported by substantial evidence. *Hamilton v. First Baptist Elderly Hous. Found.,* 436 N.W.2d 336, 338 (Iowa 1989). Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Id.*

II. *Whether the Bank was a Holder in Due Course.*

The district court concluded that the Bank was not a holder in due course under the Iowa UCC because it had been "on notice of the restrictions imposed on [Waukon Auto's] account." Consequently, the court ruled that the Bank was not entitled to the protection from claims that comes with this status. The Bank argues that the district court erred regarding this issue. We disagree.

The term "holder in due course" is defined in Iowa Code section 554.3302(1) (1987):

A holder in due course is a holder who takes the instrument

   a. for value; and

   b. in good faith; and

   c. *without notice* that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

(Emphasis added.) The rights of a holder in due course are set out in section 554.-3305, which provides that "[t]o the extent that a holder is a holder in due course the holder *takes the instrument free from ... all claims to it on the part of any person.*" (Emphasis added.) "Notice" to the purchaser of an instrument is defined in part as follows:

The purchaser has notice of a claim against the instrument when the purchaser has knowledge that a fiduciary has negotiated the instrument in payment of or as security for the fiduciary's own debt or in any transaction for the fiduciary's own benefit or otherwise in breach of duty.

Iowa Code § 554.3304(2).

The Bank disagrees with the district court's conclusion that the Bank had notice of restrictions on Rosendahl's authority to make certain transactions with it. The

Bank contends that it was not on notice because Waukon Auto had clothed Rosendahl with apparently unrestricted authority. He was, after all, the manager of the store and had responsibility for depositing customer checks and cash receipts. The Bank points out that the rubber stamp used by Rosendahl contained no restrictions such as "For Deposit Only." In addition, Waukon Auto made no specific effort to inform the Bank, with a corporate resolution for example, that Rosendahl had no authority to cash checks.

The Bank's contentions boil down to two questions: first, whether Rosendahl had apparent authority to cash customer checks; and second, whether, even in the absence of apparent authority, the Bank had notice of the restrictions on Rosendahl's authority.

A. *Apparent authority.* The Bank argues that Rosendahl had apparent authority to cash customer checks. As one annotation says, the results in cases in which the "apparent authority" argument is raised "depend on the particular facts, and no rules of uniform application can be stated." Annotation, *Right of Check Owner to Recover against One Cashing It on Forged or Unauthorized Indorsement and Procuring Payment by Drawee*, 100 A.L.R.2d 670, 682 (1965). "It appears, however, that in a proper case apparent or ostensible authority may be a valid defense precluding recovery." *Id.*

■ In *Grismore v. Consolidated Products Co.*, a case cited by the Bank, we said the burden of showing that an agent acted within the scope of the agent's actual or apparent authority is on the party claiming that such authority existed. 232 Iowa 328, 334, 5 N.W.2d 646, 651 (1942). "Apparent authority must be determined *by what the principal does*, rather than by any acts of the agent." *Id.* at 335, 5 N.W.2d at 651 (emphasis added). "For apparent authority to exist, the principal must have acted in such a manner as to lead persons dealing with the agent to believe the agent has authority." *Clemens Graf Droste Zu Vischering v. Kading*, 368 N.W.2d 702, 711 (Iowa 1985). This determination is a fact question. *Grismore*, 232 Iowa at 334, 5 N.W.2d at 651.

■ Because it is a fact question, we can reverse only if the district court is wrong as a matter of law. *See State v. Lyrek*, 385 N.W.2d 248, 250 (Iowa 1986). We do not think that is the case here.

The Bank suggests that the lack of a restriction on the rubber stamp was an indication of Rosendahl's apparent authority to present stamped checks for cash. We think that, at best, the lack of a restriction on the stamp showed that Rosendahl's authority was ambiguous and needed to be confirmed by the Bank. This ambiguity is underscored by the fact that the signature card only gave Anderson, not Rosendahl, the authority to withdraw funds from the checking account.

Further, although the Bank was aware that the stamp was normally used for Waukon Auto's indorsements, it allowed some of the customer checks to be cashed with only a hand-written indorsement. Given Waukon Auto's usual practice of using the stamp, the handwritten indorsements should have raised the possibility that Rosendahl was acting in breach of his duty as a fiduciary, beyond whatever authority he might have had. *See* Iowa Code § 554.3304(2) (purchaser of instrument has notice of claims against the instrument when purchaser has knowledge that a fiduciary has negotiated the instrument in breach of fiduciary's duty).

One additional piece of evidence militates against the Bank's apparent authority argument. Rosendahl on occasion would send Barr, an employee without managerial responsibilities, to the Bank to cash customer checks. According to Barr's testimony, Rosendahl instructed her to sign her own name on the checks. No inquiry was ever made regarding Barr's reason for cashing the checks.

B. *Notice.* We have never addressed the question of notice under the Iowa UCC. But pre-UCC cases with similar facts support the district court's decision here. We note that the official comment to Iowa Code section 554.3304(2) says that "this

subsection is generally in accord with prior Iowa law," thus indicating that the pre-UCC cases are still persuasive authority.

In one of those cases, *Wormhoudt Lumber Co. v. Union Bank & Trust Co.*, 231 Iowa 928, 2 N.W.2d 267 (1942), a co-payee indorsed checks in the names of both himself and the other payee without the other's authority. When the indorser absconded with the funds, the writer of the checks sued the drawee bank. We said, "[i]t must be remembered that the primary duty to determine the genuineness of indorsements rests upon the drawee bank which has obligated itself to pay out the money of its depositor only to those authorized to receive it." *Id.* at 935, 2 N.W.2d at 271. The implication of this statement seems to be that banks are generally on notice that the "genuineness of indorsements" must be confirmed.

Courts in other states have dealt with similar factual scenarios under their versions of the UCC.

For example, in *Mott Grain Co. v. First National Bank and Trust Co.*, 259 N.W.2d 667, 670 (N.D.1977), a bank accepted a third-party check payable to a business from the manager of the business, who was also known to be a stockholder. The checks in question had been indorsed by hand and were presented for deposit into the manager's personal account. The North Dakota supreme court held that the bank was not a holder in due course because it had allowed the manager to deposit the checks "for his own benefit," thus giving the bank notice of claims against the checks.

These cases each contain facts that we think are also significant here. In *Wormhoudt Lumber* and *Mott*, as here, customer checks bearing indorsements of a questionable nature were presented at a bank. Both *Mott* and the present case involved handwritten indorsements in particular, which are unusual in a business context. While Rosendahl, unlike the manager in *Mott*, was not depositing the checks into a personal account, the cash Rosendahl obtained was certainly more susceptible to personal use than funds in a personal account.

■ Given these facts, we think that the Bank had notice of possible problems with Rosendahl's transactions and that it should have made inquiries about his authority to cash customer checks.

The Bank raises two other arguments that bear on this issue, neither of which we find meritorious.

One of the Bank's contentions is that the district court accorded undue significance to the signature card as a record the Bank should have checked. The district court found that the signature card for Waukon Auto's checking account "clearly show[ed] that only Mr. Anderson had authority to handle this account, except for deposits." The court then concluded that the Bank was not a holder in due course because "it was on notice of the restrictions imposed on [the] account," and that the Bank had not acted in a commercially reasonable manner because "at no time did it ever examine its own records to determine what was the authority of the manager in handling the account."

The Bank points out, rightly, that Rosendahl never attempted to draw on the account itself. Therefore, the Bank argues, "the existence of a signature card and a signature thereon is irrelevant."

The district court, however, did not rely completely on the signature card to support its conclusion. Several other facts were also probative.

Besides the signature card, the court mentioned the Bank's failure to ask about Rosendahl's authority. This inquiry was necessary because the Bank knew that Rosendahl was only an employee of Waukon Auto. Further, the court said the Bank should have been aware that businesses such as Waukon Auto generally do not pay creditors with cash, which was Rosendahl's explanation for cashing the checks. In addition, we note there is no dispute that the checks being cashed were payable to Waukon Auto, not to Rosendahl.

We think these facts by themselves provide ample support for the district court's

conclusion. It was unnecessary for the court to consider the signature card.

The Bank also argues that it had no duty to inquire about Rosendahl's authority because he was presenting properly indorsed "bearer paper." We reject this argument because in fact the checks were *not* properly indorsed. Rosendahl *did not* have authority to indorse checks for *cash;* he only had authority to indorse them for deposit. Further, the circumstances surrounding Rosendahl's transactions—customer checks payable to a corporate payee being presented by an employee for cash, some with only handwritten indorsements—should have raised the possibility for the Bank that the checks were not properly indorsed bearer paper.

In summary, we think the district court correctly decided this issue.

III. *Whether the Bank Acted in Accordance with Reasonable Commercial Standards.*

The district court also found that the Bank was not protected from liability for conversion under the Iowa UCC because it had not acted in accordance with reasonable commercial standards. The court said that the Bank "did not act under a reasonable commercial standard because at no time did it ever examine its own records to determine what was the authority of the manager in handling the account." The Bank asserts that this conclusion was erroneous. We again disagree.

Iowa Code section 554.3419(3) provides that

> [s]ubject to the provisions of this chapter concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and *in accordance with the reasonable commercial standards* applicable to the business of such representative *dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion* or otherwise to the true owner beyond the amount of any proceeds remaining in that representative's hands.

(Emphasis added.)

The Bank characterizes its acts as commercially reasonable and claims it should be protected from liability under section 554.3419(3). According to the Bank, nothing in its records indicated whether Rosendahl had authority to cash customer checks, and the indorsements on some of the checks were made with a stamp containing no restriction. In addition, Rosendahl offered a plausible explanation for his need for cash: making C.O.D. purchases for Waukon Auto. The Bank contends that in light of these facts, it was commercially reasonable for the Bank to cash checks for Rosendahl.

We have never addressed the issue of commercial reasonableness under the Iowa UCC. But other courts looking at this issue have generally held that a payee could recover for conversion "where there has been some circumstance ... which should have alerted the bank to the possibility of an unauthorized indorsement, but the bank failed to make any inquiry." Annotation, *Payee's Right of Recovery, in Conversion under UCC § 3–419(1)(c), for Money Paid on Unauthorized Indorsement*, 23 A.L.R.4th 855, 859 (1983). An example of a circumstance that should put a bank on inquiry notice is "presentment by an individual of a check payable to a corporation but indorsed by the individual for deposit to his own account." *Id.* "Conversely, in the absence of such circumstances, courts have concluded that the bank acted reasonably and thus that the payee failed to establish a right to recover." *Id.*

The question, then, is whether any circumstances would have alerted a bank acting in a commercially reasonable manner that Rosendahl's authority to cash checks was in doubt, thus giving rise to a duty to inquire.

According to one court, the test to be applied when resolving this fact question is "whether a reasonable [person] in accordance with reasonable commercial standards would be put on notice of some impropriety appearing either from the form of the instrument and its indorsements or from knowledge of facts outside the instrument

itself." *Trust Co. of Ga. v. Port Terminal & Warehousing Co.*, 153 Ga.App. 735, 740, 266 S.E.2d 254, 258 (1980) (citing 2 Anderson, *Uniform Commercial Code* § 3-406:5, at 941 (2d ed. 1971)).

Another court, addressing the issue of what a reasonable commercial standard would be when an agent attempted to cash a check payable to the principal, said that "it has been judicially recognized in many adjudicated cases that one who cashes a check indorsed by an agent has the duty to inquire as to the agent's authority to make the indorsement.... [T]he duty to inquire is not absolute; the payor may rely upon the apparent authority of the agent...." *Gresham State Bank v. O & K Constr. Co.*, 231 Or. 106, 120-21, 370 P.2d 726, 733 (1962).

■ The form of the instruments should have suggested to the Bank that more investigation was needed before cashing checks for Rosendahl. Here, the instruments in question were in the form of *customer* checks *payable to Waukon Auto.* Such a form clearly indicates that Rosendahl's authority over the checks was to be defined by Waukon Auto's owner. If the Bank felt that Anderson, the owner, had not clearly defined that authority, for example by corporate resolution, it should have inquired. It was not commercially reasonable to simply assume that Rosendahl had authority to cash checks, when such an assumption was completely inconsistent with Anderson's expressed intent regarding Rosendahl's authority over the checking account.

The form of the indorsements on some of the checks should also have given the Bank pause. Some indorsements were handwritten, which should have looked odd for any business check, especially when the business in question was known to indorse its checks normally with a rubber stamp.

Finally, Rosendahl's practice of sending Barr, an employee without managerial responsibilities, to cash customer checks certainly should have raised some suspicion on the part of the Bank, especially because Barr had signed her own name on the checks.

In summary, we think that enough ambiguity existed regarding Rosendahl's authority to give rise to a duty to inquire. The district court was correct in concluding that the Bank acted unreasonably in failing to make such an inquiry.

■ The Bank also argues that Waukon Auto failed to present evidence showing that the Bank acted in a commercially unreasonable manner. We reject this argument for two reasons. First, the Bank cites no authority for the proposition that Waukon Auto has the burden of presenting such evidence. Second, as Waukon Auto points out, the district court can properly take judicial notice of reasonable commercial standards, which Waukon Auto asked it to do here. *Cf. Gresham State Bank*, 231 Or. at 120-21, 370 P.2d at 733 ("it has been judicially recognized in many adjudicated cases that one who cashes a check indorsed by an agent has the duty to inquire as to the agent's authority to make the indorsement").

Significantly, the only evidence of commercial standards presented by the Bank was the testimony of one of its officers, which was predictably self-serving. No written standards were cited.

IV. *Whether Waukon Auto's Allegedly Negligent Business Practices Provided an Affirmative Defense.*

The Bank asserts the district court erred in concluding that Waukon Auto's allegedly negligent business practices did not provide an affirmative defense under Iowa Code section 554.3406. Once again, we disagree.

Section 554.3406 provides:

Any person *whose negligence substantially contributes* ... to the making of an unauthorized signature is *precluded from asserting* ... lack of authority against a *holder in due course* or against a drawee or other *payor who pays* the instrument in good faith and *in accordance with reasonable commercial standards* of the drawee's or payor's business.

(Emphasis added.)

In considering the Bank's affirmative defense, the district court noted that under

section 554.3406, negligence precludes recovery only against a holder in due course or payor who acts in a commercially reasonable manner. Because the Bank was neither, the court concluded that Waukon Auto's recovery was not precluded by its allegedly negligent employee supervision and bookkeeping practices.

 As we have already explained, the district court was correct in finding that the Bank was not a holder in due course and did not act in a commercially reasonable manner. Hence, like the district court, we think section 554.3406 simply does not apply here.

### V. *Whether Pro Tanto Credit was Proper for the Amount Rosendahl Repaid Waukon Auto.*

In its cross-appeal, Waukon Auto argues that the district court erred in allowing pro tanto credit for the amount Rosendahl had repaid Waukon Auto. It contends the Bank failed to show that compensation would be excessive in the absence of such credit. We agree.

The pro tanto credit rule is summarized in *Knauss v. City of Des Moines:*

> We allow a dollar-for-dollar credit against a plaintiff's ... verdict for sums received in settlement from other tortfeasors. The rule is based on the principle that "while a party is entitled to full compensation for his injuries, there can only be one satisfaction therefor." All payments in settlement of a claim, except payments in the nature of a gratuity or arising from separate contract, fall under this rule which is designed to prevent the unjust enrichment of a double recovery.

357 N.W.2d 573, 578 (Iowa 1984) (citations omitted). The party seeking pro tanto credit has the burden of proving the necessity for it. *Id.*

Waukon Auto cites *Knauss* as an example of a case in which pro tanto credit was not proper. There, in a suit against only one of two alleged tortfeasors, "the parties and the [trial] court [had] consciously narrowed and restricted plaintiff's proof on the issue of damages." The court had only allowed introduction of evidence regarding damages allegedly caused by the defen-

dant; evidence of damages caused by the other alleged tortfeasor was not admitted. *Id.* at 578–79.

In *Knauss* we affirmed the district court's decision not to allow pro tanto credit for a settlement amount received from the other tortfeasor. The basis of this holding was that the defendant had failed to show that without such credit, the plaintiff would have received more than full compensation. *Id.* at 578. Given the limited nature of the evidence introduced at trial, we were "unwilling to assume" that the damages attributable to the defendant plus the settlement amount would have been a greater sum than the total of the plaintiff's damages. *Id.* We distinguished cases in which pro tanto credit was proper by saying that "in each [of the other cases] the jury determined the *total amount of damages* caused by joint tortfeasors." *Id.* (emphasis added).

 Here the record is clear that Waukon Auto sustained total losses of approximately $35,000. Of that amount, only $25,160.79 was attributable to checks cashed by the Bank. This last sum together with the $5800 payment Waukon Auto received from Rosendahl amounts to $30,960.79, an amount *less* than the total damages sustained by Waukon Auto. Clearly, the Bank failed to show that without crediting it with the $5800, Waukon Auto would receive more than full compensation for its total damages. The district court thus erred in applying the pro tanto credit rule.

### VI. *Disposition.*

For the reasons set out above, we think the district court correctly decided the issues presented in the appeal but incorrectly decided the issue presented in the cross-appeal. Accordingly, we affirm the judgment of the district court on the appeal and reverse its judgment on the cross-appeal.

AFFIRMED ON APPEAL; REVERSED ON CROSS–APPEAL.

Tax costs one-half to each party.