John PHARISS, Plaintiff–Appellee,

v.

Carl EDDY, Defendant,

and

Security State Bank, Defendant–Appellant.

No. 90–1022.

Court of Appeals of Iowa.

Oct. 29, 1991.

Cheryl L. Weber and James F. Kalkhoff of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for plaintiff-appellee.

Robert J. Murphy of Roberts & Murphy, Independence, for defendant-appellant.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

SCHLEGEL, Presiding Judge.

Prior to 1976 Phariss operated a business known as Railroad Salvage Company and farmed in the Independence area. Phariss entered into several contracts with the Chicago, Rock Island and Pacific Railroad to perform salvage jobs. In 1975 Phariss learned that the railroad had been placed in involuntary bankruptcy. He then filed a claim in the name of his salvage company with the bankruptcy trustee for over $18,-000. After 1976 Phariss left Iowa and closed his bank account with the Security State Bank in Independence.

In 1984 Phariss contacted the railroad regarding his claim. The railroad responded that it had paid the outstanding claim by check dated July 27, 1983, and that the check was deposited on August 1, 1983. The check was signed "Railroad Salvage Co. Carl Eddy" and was accepted by Security State Bank. Eddy did maintain checking accounts with the bank and had done salvage work in the past under the name Independence Salvage Company. Eddy also has a history of overdrawn checks.

In July 1988 Phariss filed this action seeking recovery of the check from Eddy and Security State Bank. Eddy had filed for bankruptcy and ninety percent of Phariss's claim against him for the check proceeds was forgiven; the case proceeded solely between Phariss and the bank. Following trial, the district court entered judgment for Phariss for the amount of the check, $16,853.43, plus interest from August 1, 1983. Security State Bank has filed this appeal. We review the district court's decision only to correct errors of law. Iowa R.App.P. 4. Findings of fact are binding if supported by substantial evidence. *Hamilton v. First Baptist Elderly Hous. Found.*, 436 N.W.2d 336, 338 (Iowa 1989).

I. Security State Bank first claims the trial court erred in failing to grant its motion to dismiss. The bank made a motion to dismiss at the close of Phariss's case stating Phariss had failed to properly prove the check belonged to him. The court reserved ruling on the motion. In his brief Phariss states "[t]he trial court never did make a ruling on this Motion to dismiss." The trial court did find, however, "that plaintiff has established that the check was his property and that the Bank cashed it without his authority." We believe the trial court's ruling overruling the motion to dismiss is explicit in its findings.

"Overruling or sustaining a motion to dismiss does not depend upon trial court's discretion. It must rest on legal grounds and is subject to review by this court." *Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977) (citation omitted). A motion to dismiss connotes no ambiguity or uncertainty in the pleadings. *Id.* (citation omitted). After thorough review of the record, we determine there is substantial evidence to support the trial court's determination the check in question belonged to Phariss. We find most important the fact that the check, the proof of claim submitted by Phariss, and the letters from the railroad company addressed to Phariss all contain the same vendor number. The trial court properly overruled the motion to dismiss.

II. Iowa Code section 554.3419(1)(c) (1991) provides: "An instrument is converted when ... it is paid on a forged endorsement." Phariss claims the bank is liable in conversion for accepting the check wrongfully endorsed by Eddy. Security State Bank argues, however, that the trial court erred in not finding that it acted in a reasonable manner and the bank was thus not liable under Iowa Code section 554.3419(3).

Subject to the provisions of this chapter concerning restrictive endorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in that representative's hands.

Iowa Code § 554.3419(3) (1991).

Security State Bank claims it acted in good faith and in accordance with reasonable commercial standards in dealing with the check. It states that Eddy was in the railroad salvage business, Eddy believed the check to be his own, Phariss had not done any business with the bank since 1976, there was nothing facially irregular about the check except the crossed-out portion of the address and the circling of another portion of the address, and Eddy, while not an ideal customer, had always "made good" on his accounts at the bank. Phariss contends Eddy had no authority to act for or on behalf of Railroad Salvage Company so his endorsement is forged.

First, we determine Eddy's signature was a forged endorsement. It makes no difference whether he believed the check to be his own or not. For purposes of a conversion action, a forged endorsement and an unauthorized endorsement are synonymous. *Fort Dodge Creamery Co. v. Commercial State Bank*, 417 N.W.2d 245, 246 (Iowa App.1987) (citations omitted).

Second, because there is a forged endorsement the bank is liable for the full amount of the check unless it meets the exception in Iowa Code section 554.3419(3). We next address the issue of reasonable commercial standards.

The teller who handled the check for Security State Bank did not check the signature cards. She testified that she made no inquiries into the transaction whatsoever. The president of the bank was the officer who approved the transaction. He testified that he did not check the signature cards nor any other records. He stated that because he knew Eddy and knew he was a customer of the bank, he allowed the transaction without any checking or inquiries as to Eddy's authority to act for Railroad Salvage Company.

The only Iowa case to deal with commercial reasonableness under Iowa Code section 554.3419 is *Waukon Auto Supply v. Farmers & Merchants Savings Bank*, 440 N.W.2d 844 (Iowa 1989). In that case the manager of Waukon Auto Supply embezzled funds from the business. He endorsed customer checks either by hand or rubber stamp and then presented them for cash to the bank where Waukon Auto had a checking account. The manager was not authorized to withdraw cash. The bank employees in *Waukon Auto* as here did not check signature cards and had never asked about the manager's authority. *Id.* at 848. Two bank tellers testified their normal practice was to allow anyone engaged in business locally to make cash transactions. *Id.* at 846.

The key question according to the *Waukon* court was whether any circumstances would have alerted a bank acting in a commercially reasonable manner that the authority to cash checks was in doubt, giving rise to a duty to inquire. *Id.* at 849. The court determined there were alerting circumstances and that Farmers & Merchants Savings Bank did not act under a reasonable commercial standard because at no time did it ever examine its own records to determine what authority the manager had. *Id.* Using the same standard, we determine Security State Bank did not act in accordance with reasonable commercial standards.

The record demonstrates that enough ambiguity existed concerning Eddy's authority to cash the check to give rise to a duty to inquire as to his authority. The bank acted unreasonably in failing to make inquiry. The form of the check should have suggested to the bank that more investigation was needed, especially for an amount exceeding $16,000. The check was payable to Railroad Salvage Company, Route 4, Box 350, Independence, Iowa. Phariss's old address was Route 4 and Box 350 is Eddy's postal box. Eddy's business was Independence Salvage Company or Independence Wholesale, but not Railroad Salvage Company. Adding to the need for inquiry was the fact the check had been altered. The address referring to Route 4 had been crossed out and Box 350 was circled. These alterations should have caused the bank to make inquiries or some investigation.

In addition, the bank president was aware of Eddy's significant history of returned checks and overdrafts. Evidence suggests the bank was even the trustee of Eddy's funds during a previous suit against Eddy for conversion. Eddy was in an overdraft situation in his personal account when the check made out to Railroad Salvage Company was cashed. "An example of a circumstance that should put a bank on inquiry notice is 'presentment by an individual of a check payable to a corporation but indorsed by the individual for deposit to his own account.'" *Waukon Auto*, 440 N.W.2d at 849 (citing Annotation, *Payee's Right of Recovery, in Conversion under UCC § 3–419(1)(c), for Money Paid on Unauthorized Indorsement*, 23 A.L.R.4th 855, 859 (1983)). The check here was ultimately deposited into Eddy's personal account. The check was initially deposited into an account in the name of Independence Wholesale Company. This account was closed on the date of the transaction and had been closed for two years. Security State Bank accepted the check, deposited it into a closed account, and later deposited it into a personal account without ever inquiring as to Eddy's authority.

Phariss also had an account with the bank in the past, and his business was listed as Railroad Salvage Company. The bank had the ability to investigate the check to protect Phariss from conversion of his property; all these circumstances should have made the bank suspicious. It does not seem wise for the bank to unconditionally accept any check solely because it is from a customer of the bank.

What is or is not commercially reasonable is a question of fact. *See* Comment, *Payee v. Depositary Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements?*, 45 U.Colo. L.Rev. 281, 305 (1974). For all the above reasons, we find there is substantial evidence to support the trial court finding the

bank did not act in accordance with reasonable commercial standards.

■ III. The bank next contends the trial court erred in not finding it a holder in due course. Iowa Code section 554.3302(1) (1991) defines a holder in due course:

A holder in due course is a holder who takes the instrument

    a. for value; and

    b. in good faith; and

    c. without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

If a holder is a holder in due course, he or she takes the "instrument free from ... all claims to it on the part of any person." Iowa Code § 554.3305(1) (1991). Notice to the purchaser of an instrument is defined as:

The purchaser has notice of a claim or defense if ... the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay.

Iowa Code § 554.3304(1)(a) (1991).

Security State Bank is charged with knowledge of claims apparent from the face of the instrument. The fact that the check in question was made out to Railroad Salvage Company calls into question the ownership of the instrument when presented for deposit by Eddy who did business as Independence Wholesale Company and Independence Salvage. For all the reasons expressed in the previous section, the circumstances gave the bank a reason to know a claim may exist. We conclude the bank did not take without notice and is, therefore, not a holder in due course.

■ IV. The bank's last claim is that Phariss is not entitled to interest from the date of conversion and, if he is, the rate of interest should be five percent until the date of filing of the judgment and ten percent thereafter. The trial court awarded Phariss interest on the amount of the check from August 1, 1983, the date the bank accepted it and cashed it. Interest is allowed from the date of conversion. *F.S. Credit Corp. v. Shear Elevator, Inc.*, 377 N.W.2d 227, 235 (Iowa 1985). We affirm the trial court and find Phariss is entitled to interest at the statutory rate from the date of conversion, August 1, 1983. Iowa Code § 535.3 (1991).

We affirm the trial court on all issues.

AFFIRMED.