HUSKER NEWS COMPANY, Appellant,

v.

SOUTH OTTUMWA SAVINGS BANK, Ottumwa, Iowa; Pella National Bank, Pella, Iowa; Mahaska State Bank, Oskaloosa, Iowa; Iowa Trust & Savings Bank, Oskaloosa, Iowa; L & A Food Stores, Inc. d/b/a Pella's Super Valu, Appellees.

PELLA NATIONAL BANK, South Ottumwa Savings Bank, Mahaska State Bank, and Iowa Trust and Savings Bank, Appellees,

v.

IOWA STATE SAVINGS BANK, Appellee/Cross–Appellant,

and

Walter Hopf, Third–Party Defendant.

No. 90–1598.

Supreme Court of Iowa.

March 18, 1992.

Richard B. Bauerle and Gregory G. Milani of Keith, Orsborn, Bauerle, Milani & Neary, Ottumwa, for appellant.

Jon P. Sullivan of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellee Iowa State Sav. Bank.

Carol A. Wendl of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellee Pella National Bank.

James M. Box of Box & Box, Ottumwa, for appellee South Ottumwa Sav. Bank.

James M. Hansen of Clements, Pabst, Hansen & Maughan, Oskaloosa, for appellee Iowa Trust & Savings Bank.

Paul D. Hietbrink and James H. Gilliam of Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, Des Moines, for appellee L & A Foods, Inc. d/b/a Pella Super Valu.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

HARRIS, Justice.

This tort suit, asserting a conversion claim under the uniform commercial code and seeking recovery for negligence, is an attempt by an employer to collect for the fraudulent appropriation of funds by one of its own employees. Defendants are plaintiff's customers, the customers' banks, and the employee's bank. Prior appeals, arising from the same litigation, were on an issue not involved here. *See Vander Linden Drug Store, Inc. v. Husker News Co.*, 473 N.W.2d 209 (Iowa 1991) (table); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476 (Iowa 1990). The trial court dismissed the present claims and we affirm. Because the case was filed and tried as an equity action, our review is de novo. *Huston v. Exchange Bank*, 376 N.W.2d 624, 626 (Iowa 1985).

Plaintiff Husker News Company (Husker) is a wholesale distributor of magazines and books to retail stores. Its customer stores are serviced by drivers employed by Husker. The drivers' tasks include: delivering magazines to Husker's customers; returning magazines not sold by the customers to Husker for credit on the customers' account; delivering bills to Husker's customers; and collecting payment on those bills.

Walter Hopf was employed by Husker as a driver. His route included the Iowa cities of Bloomfield, Oskaloosa, Pella, Ottumwa, Chariton, Centerville, and Albia. Hopf, unlike Husker's other drivers, was not required to remit the customer payments he received on a daily basis. Instead, because of the remoteness of Hopf's sales territory, it was decided he could deposit cash he received from his customers into his personal bank account in the defendant Iowa State Bank (the Knoxville bank). Hopf was to write checks from this account to reimburse Husker for cash he thus collected. Husker did not authorize Hopf to deposit the checks he received from his customers into his personal account. Checks were to be made out to, and delivered to, Husker.

Twice a week Husker sent a truck loaded with new merchandise to Hopf. The person delivering the truck would then take back the truck Hopf had been using, which was loaded with books and magazines not sold by Hopf's customers. The trucks, however, were not always large enough to accommodate all of the returns. So some of the returns were stored in Hopf's garage. Husker paid Hopf for the storage.

Hopf developed elaborate plots to appropriate funds from his customers' accounts. Included were: (1) giving his customers less than full credit for their returns; (2) taking magazines stored in his garage and adding them to other customers' returns; (3) buying magazines at garage sales and book sales and adding them to customer returns; and (4) taking magazines from one customer's account and adding them to another's. Hopf also deposited checks made payable to Husker into his account, even though he had no authority to do so. He endorsed these checks by signing "Husker News by Walter Hopf." A teller at the Knoxville bank had asked Hopf if he had authority to endorse the checks. Hopf said that he did, and the bank took his word for it.

The Knoxville bank stamped "P.E.G." onto the checks to indicate prior endorsement guaranteed. The checks were cleared through the federal reserve bank system and then sent to the drawee banks. The drawee banks relied upon the P.E.G. stamp and did not further investigate Hopf's authority to endorse the checks.

As early as 1982, signs of Hopf's wrongdoing began to surface. Keith Burnam, an employee and officer of Keith's Super Valu, a Husker customer, told an employee of Husker that Hopf was not giving his store full credit for its returns. Employees of the store had counted the magazines to be returned before Hopf took them. When their count did not match Hopf's, Keith called Husker to complain. Keith reported that he thought Hopf was intentionally misrepresenting the amount of the returns and that Hopf should be fired. Husker reimbursed the store the amount claimed to be short. No other action was taken. Three years later, in response to a survey, the vice president of the store wrote that

he did not appreciate being serviced by a dealer who had been caught stealing from the store. A representative of Husker met with the vice president of the store, but, again, no action was taken.

Other unusual events happened during Hopf's employment. Hopf once returned more magazines from a customer than were delivered to that customer. On another customer's account, which was normally paid by check, Hopf paid over $3000 in cash to "catch-up" the account. Another unusual event occurred when a personal check issued by Hopf "bounced," even though the checks written by Hopf were merely to reimburse Husker for cash already deposited in his account.

Eventually Hopf's deception was discovered. In August of 1988 a manager of Pella Super Valu, another Husker customer, counted its magazines for return before Hopf took them, in much the same way the employees of Keith's Super Valu had done. This manager also compared his count to Hopf's. When the count did not match, the manager examined the canceled checks his store had written to Husker. The manager informed Husker that some of the checks were endorsed by stamp, while others were endorsed by Hopf. Hopf was fired.

From January 1, 1984, to December 31, 1988, Hopf had deposited $124,010 in checks payable to Husker into his personal account. He also deposited $238,095 in cash into the account. Hopf wrote checks to Husker totaling $308,473.

On January 9, 1989, Husker filed a petition in equity against South Ottumwa Savings Bank, Pella National Bank, Mahaska State Bank, and Iowa Trust and Savings Bank ("drawee banks"), alleging conversion. The drawee banks filed cross petitions against the Knoxville bank, the bank in which Hopf had his personal account. Husker later amended its petition to include negligence claims against all of the defendants. Negligence claims were also asserted against some of Husker's customers.

Following a bench trial the court found for the defendants and Husker has appealed.

█ I. Husker contends there was an abuse of discretion in a trial court ruling regarding separate trials under Iowa rule of civil procedure 186. Husker moved for separate trials, seeking to sever its conversion claims from its negligence claims. The trial court (by a judge other than the one who later tried the case) however separated plaintiff's actions by party, separating plaintiff's claims against the bank defendants from its claims against its customers. Husker attempted to appeal from this order, but by amendment stated it did not wish to appeal from a ruling it then considered favorable.

The attempted appeal was dismissed as interlocutory and the manner in which the trials had been separated was ignored for five months until the very morning of trial. Then Husker first told the trial court it wished to try its negligence claims together, so that a percentage of fault could be determined for all parties involved in the negligence claims.

The order separating trials was discretionary. *Meeker v. City of Clinton*, 259 N.W.2d 822, 827 (Iowa 1977). The closer to trial, the greater the discretion; rulings denying eleventh-hour requests to sever trials are extremely unlikely candidates for reversal. *Briner v. Hyslop*, 337 N.W.2d 858, 871 (Iowa 1983). The trial court had almost unfettered discretion on the day of trial to deny this motion. There was clearly no abuse of discretion in denying it.

II. The district court dismissed Husker's negligence claims against Pella Super Valu, reasoning that the customer owed no duty to Husker. In assigning this dismissal as error on appeal, Husker claims the customer had two duties: (1) to count its returns and compare them with Hopf's credit memo; and (2) to examine the back of its canceled checks for unauthorized endorsements.

█ We do not recognize a good-Samaritan obligation to prevent the perpetration of a tort by another on a third party. *Anthony v. State*, 374 N.W.2d 662, 668 (Iowa 1985) ("The general rule of common law is that a person has no duty to prevent

a third party from causing harm to another."). There would be even less reason to impose a duty on an outsider to protect an employer from its own employee. Pella Super Valu had no common-law duty to prevent Hopf from harming Husker.

■ For its theory that Pella Super Valu owed a duty to examine the back of its cancelled checks, Husker relies on Iowa Code section 554.4406 (customer's duty to discover and report unauthorized signature or alteration). Reliance on this section is misplaced; the section creates a duty owed by a bank customer to a bank. It does not raise a duty outside that relationship.

The claims against Pella Super Valu were properly dismissed.

III. The trial court held that the drawee banks were holders in due course and therefore took the checks free from "all claims to it on the part of any person...." Iowa Code § 554.3305(1). Husker assigns error in this holding. In contending the banks were not holders in due course, Husker points to Iowa Code section 554.-3404(1) which provides: "Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless that person ratifies it or is precluded from denying it...."

■ Husker is correct in asserting that an unauthorized signature generally will prevent subsequent takers of an instrument from being holders, and therefore holders in due course. This is because a forger's signature does not constitute an endorsement, a requirement to qualify as a holder in due course. See Iowa Code § 554.1201(20) ("holder" is one in possession of an instrument "drawn, issued or endorsed to that person") and § 554.3302 (holder in due course defined); see White & Summers U.C.C. § 14–3, at 552–53 (2d ed. 1980).

The drawee banks counter Husker's challenge to their status as holders in due course in two separate but related ways. They first claim that negligence on the part of one claiming an unauthorized signature may preclude that person from denying that the signature was unauthorized. See

*White & Summers* U.C.C. § 13–3, at 491. The trial court did not react to the banks' first response; it made no finding regarding whether Husker's negligence precluded Husker from asserting that Hopf's signatures were unauthorized under Iowa Code section 554.3404(1).

We also pass the banks' first response and rely instead on the drawee banks' second response to Husker's challenge. For their second response the banks point out that they are entitled to dismissal under Iowa Code section 554.3406 which provides:

Any person whose negligence substantially contributes to ... the making of an unauthorized signature is precluded from asserting the ... lack of authority ... against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or the payor's business.

The uniform commercial code does not define negligence; the matter is resolved as a factual issue in each case. U.C.C. 3–406, comment 3.

The banks seek to gain advantage of section 554.3406 by making two necessary showings: (1) Husker's negligence substantially contributed to Hopf's unauthorized signature; and (2) the banks acted in good faith and in accordance with reasonable business procedures. The trial court found the banks carried this two-step burden and we agree.

■ Husker, not the banks, authorized Hopf to deposit its cash, which would seem more difficult to trace than checks, in his personal bank account. Husker placed Hopf in complete and exclusive control of the customers' accounts. Hopf was even allowed to store Husker materials in his garage. During Hopf's twenty years of employment, Husker never asked to inspect Hopf's checking account. Neither did it audit his customer accounts, even after one of Hopf's checks to Husker "bounced." Finally, Husker ignored valid customer complaints indicating Hopf was manipulating the records of Husker's credits with its customers. On our de novo review we find these matters clearly

amounted to negligence on Husker's part which substantially contributed to Hopf's false signatures on the checks. *See* Comment, *The Double Preclusion of U.C.C. Section 3-406: Duties of Care in Reasonable Commercial Standards,* 32 Drake L.Rev. 179, 202–07 (1982).

 The banks also established they acted in good faith and in accordance with reasonable business procedures. Good faith is honesty in fact. Iowa Code § 554.-1201(19). Checks were presented and accepted in the customary way. Indeed, Husker makes no serious contention that the banks did not act in good faith.

The banks also established that they acted in accordance with reasonable business procedures. The checks, when presented, were examined for an endorsement which was compared with the named payee on the front of the check. The evidence was that there was no practical way to check further, and it was therefore necessary to rely on the P.E.G. stamp. The procedure was eminently reasonable in view of the obvious fact that Husker acquiesced in it for a period of years. Similar circumstances qualified as "good faith and in accordance with commercially reasonable standards" in *Cooper v. University Bank,* 9 Cal.3d 371, 507 P.2d 609, 107 Cal.Rptr. 1 (1973).

Husker believes the *Cooper* holding is contrary to our opinion in *Waukon Auto Supply v. Farmers & Merchants Savings Bank,* 440 N.W.2d 844 (Iowa 1989). *Waukon* involved a suit by a corporate payee of checks (Waukon Auto) against the bank which cashed them. Waukon Auto's manager embezzled funds from the business by endorsing customers' checks and presenting them for cash at defendant bank where Waukon Auto had an account. We affirmed recovery against the bank, rejecting that bank's contention it followed commercially reasonable standards. *Id.* at 850.

*Waukon* is easily distinguishable from the present case. The bank in *Waukon* was the plaintiff employer's bank. The opportunity for detecting the unauthorized signature was manifestly greater in *Waukon* than it was for the drawee banks in this case, where the checks were routed for routine payment.

 IV. The trial court dismissed Husker's common-law negligence claims against the defendants. A good argument can be made that common-law recovery rights in commercial transactions were supplanted, and therefore annulled, by the modifications of the uniform commercial code. *See Equitable Life Assurance Assoc. v. Okey,* 812 F.2d 906, 908–10 (4th Cir.1983). We need not resolve the issue, however, because on this de novo review we find negligence on the part of Husker greatly exceeds the combined negligence on the part of the defendants. Recovery is therefore barred under Iowa Code section 668.3 (contributory negligence a bar to recovery if claimant bears greater percent of fault).

What we have said renders a number of the contentions moot. Plaintiff's claims were properly dismissed.

AFFIRMED.