OPINION OF THE COURT
Thomas W. Keegan, J.
Defendant moves for summary judgment upon the ground that plaintiffs complaint, sounding in contract and quasi contract, lacks merit. Plaintiff cross-moves for summary judgment dismissing defendant’s affirmative defenses.
In a memorandum and order dated May 22, 1997, the Appellate Division, Third Department, found plaintiffs cause of action for conversion time barred. (Lawyers’ Fund for Client Protection v Gateway State Bank, 239 AD2d 826.) However, the Appellate Division found the cause of action for unjust enrichment asserted by the plaintiff to be timely, and likewise held that the plaintiff had standing to maintain the action.
In 1984, Michael Mancuso murdered Evelina Mancuso. An express trust was set up by order of Supreme Court, Kings County, for the benefit of Michelle Mancuso Ellman, the corpus being the proceeds of a life insurance policy on the life of Evelina Mancuso. Attorney Gussow was retained by Maria Guttaduaria-Ellman, M.D., Michelle’s aunt and guardian, as well as trustee of the trust, to represent the interests of Michelle in obtaining these proceeds.
In February 1990, Prudential Insurance Company forwarded two life insurance checks to Gussow, which, in the aggregate, totaled $69,153.54 and were made payable to “Maria Guttaduaria-El [1]man, M.D. as trustee for the benefit of Michelle El[l]man.” Gussow endorsed the checks in Dr. Guttaduaria-Ellman’s name without her knowledge or consent and deposited them into his attorney escrow account at the Gateway State Bank, now known as Staten Island Savings Bank (Bank). Gus-sow then proceeded to draw large sums of money from this escrow account for his own personal use to the point where the entire account was nearly depleted. As a result, Michelle Ell-man’s trust never received the checks or their proceeds.
Shortly before it was discovered that these monies had been diverted by Gussow, he was found dead, the victim of an apparent accidental electrocution. Once Dr. Guttaduaria-Ellman discovered that Gussow had used the money for his own *663 personal benefit, she filed a claim with the Lawyers’ Fund for Client Protection of the State of New York (the Fund), seeking reimbursement of the $69,153.54. The Fund satisfied the claim and is now the subrogee and assignee of all claims, rights, demands and causes of action against Gussow and any other party responsible for the losses incurred, including the Bank.
Based on the following defendant’s motion for summary judgment is denied, and plaintiffs cross motion is granted.
In support of its motion, defendant artfully cites several cases and essentially argues that it holds no proceeds, has not been unjustly enriched, and therefore plaintiff has no causes of action. First, the court notes that contrary to defendant’s contention, the Appellate Division did not reject any claim based on tort, rather, they found plaintiffs action for conversion time barred. Secondly, the court found, after a careful reading of the cases proffered by the defendant, that the facts, law and relief were easily distinguished.
In turning to the merits of plaintiffs cross motion, the court finds no basis for defendant’s defense based upon a lack of personal jurisdiction. Defendant Bank was at the time of the alleged events, and still is, a domestic corporation organized and existing under the laws of the State of New York, fully engaged in the business of banking within the State.
Defendant’s second affirmative defense that plaintiff has failed to state a cause of action was addressed in this court’s decision and order of May 1, 1996. (Lawyers’ Fund for Client Protection v Gateway State Bank, 171 Misc 2d 485.) Furthermore, a defense that a complaint does not state a valid cause of action cannot be interposed in an answer. (Guglielmo v Roosevelt Hosp. Staff Hous. Co., 222 AD2d 403.)
As noted above, defendant’s third affirmative defense must be dismissed. Although plaintiffs conversion cause of action is time barred, the causes of action sounding in unjust enrichment and money had and received still remain. (Lawyers’ Fund for Client Protection v Gateway State Bank, 239 AD2d 826, 827, supra.) Likewise, the fourth affirmative defense of lack of standing has been decided in plaintiffs favor. (Lawyers’ Fund for Client Protection v Gateway State Bank, supra, 239 AD2d, at 827.)
As and for defendant’s fifth affirmative defense, stating that it was a holder in due course, the court notes that, pursuant to UCC 3-302 (1) (c), a holder in due course must take the instrument “without notice that it is overdue or has been *664 dishonored or of any defense against or claim to it on the part of any person.” Given that the checks at issue were made payable to “maria guttaudaria-elman, m.d. as trustee for the benefit of michelle el[l]man”, this court cannot conceive how the defendant Bank could lack notice of any claim to the proceeds by another party. Plaintiff simply and correctly asserts that defendant is charged with the knowledge of any and all claims apparent from the face ,of an instrument. (Millens v Kingston Trust Co., 118 Misc 2d 512, 514-515.)
Defendant’s sixth affirmative defense, that it acted in accordance with “reasonable commercial standards” when it accepted the checks for deposit, requires more consideration. It is apt to note at this point that “the balancing of rights under the UCC represents the ultimate distillation of a painstaking process of evolution, pursuant to which the risk of loss in commercial matters has been attempted to be adjusted in a fair and equitable manner.” (Five Towns Coll. v Citibank, 108 AD2d 420, 429-430.) The underlying purpose of the shifting burdens mandated under the UCC is to impose liability on the party which could most readily have prevented the fraud. (Five Towns Coll. v Citibank, 108 AD2d, supra, at 431.)
Because it is undisputed that Attorney John Gussow deposited the proceeds of the stolen checks into his escrow account at defendant Bank, it is only necessary that this court determine whether defendant negotiated the aforementioned checks, and if so, whether the signature or endorsement was unauthorized, in order to get to the issue of “reasonable commercial standards.” An unauthorized signature or endorsement is one made without actual, implied, or apparent authority, and includes a forgery pursuant to UCC 1-201 (43). Here, the checks that were negotiated by defendant Bank were unauthorized for deposit into Attorney Gussow’s escrow account. Defendant has not come forth with any proof dispelling the position propounded by the plaintiff, through the affidavit of Maria Guttaudaria-Ellman, that Attorney Gussow was not authorized to execute checks or other documents on behalf of the trust. Nor is there any evidence of apparent authority. In New York, the general rule “is that a third party ‘who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority.’ ” (FDIC v Providence Coll., 115 F3d 136, 141.) The duty of inquiry under a claim of apparent authority “arises only when (1) the facts and circumstances are such as to put the third party on inquiry, (2) the transaction is extraordinary, or (3) the novelty of the transac *665 tion alerts the third, party to a danger of fraud.” (FDIC v Providence Coll., 115 F3d, supra, at 141.)
This court believes that the facts and circumstances here gave rise to a duty of inquiry. Defendant cannot show that Maria Guttaudaria-Ellman had any contact with defendant Bank which would lead to a reasonable belief that Gussow had the authority to deposit the checks payable to her, into his own account. The very fact that two sizeable instruments, payable to a noncustomer of the Bank for whom no signature card was available, were brought to the Bank by a customer for deposit into that customer’s account should have put the defendant on inquiry notice. (See, Lund v Chemical Bank, 797 F Supp 259, 270 [finding bank’s satisfaction with the negotiated instrument based on fact that last endorsement was by its customer and that customer was financially stable to be an unreasonable commercial practice].)
Plaintiff offers various checks and bank statements from both before and after the deposit of the checks at issue, all of which cumulatively indicate an evidently intended, ongoing misappropriation of entrusted funds. (See, Home Sav. v Amoros, 233 AD2d 35, 40.) Furthermore, the defendant has not countered the allegations that funds were transferred from Gussow’s escrow account to cover fees charged to Gussow’s business account.
This same proof also establishes a prima facie case for money had and received, namely the (1) receipt of money belonging to plaintiff, (2) benefit from the receipt of the money, and (3) that under “principles of equity and good conscience, defendant should not be permitted to keep the money.” (22A NY Jur 2d, Contracts, § 519, at 241.)
First, it is well settled that “the collecting bank acquires no title to the check because of the forgery and holds the proceeds for the true payee. This establishes the privity between payee and collecting bank.” (Sonnenberg v Manufacturers Hanover Trust Co., 87 Misc 2d 202, 204.) In fact, “[t]he moment the collecting bank receives the proceeds it holds money belonging to the owner of the check and becomes a debtor of such owner and of no one else in the absence of a valid indorsement.” (Henderson v Lincoln Rochester Trust Co., 303 NY 27, 33.)
Second, the court finds that precedent has not barred an action styled in either contract or quasi contract simply because the unscrupulous attorney conveniently removed all of the fruit of his illegal acts from the defendant Bank. (See, Hechter v New York Life Ins. Co., 46 NY2d 34, 36 [upholding action *666 against defendant bank even where attorney “withdrew all the funds from his account, apparently misappropriating the portion belonging to” the plaintiff].) Indeed, here the proof shows that the defendant Bank benefitted from the cultivation of a continuing relationship with its customer, as well as by the receipt of fees for insufficient funds.
Third, that the defendant should not be allowed to enrich itself at the expense of the plaintiff is self-evident.
This proof, clarified further below, applies similarly to the claim of unjust enrichment and the contractual debtor-creditor relationship claim. Thus, the inquiry turns to whether the defendant acted in a good faith, commercially reasonable manner. If in fact it is found that defendant acted in a commercially reasonable manner, its liability is limited to the amount of proceeds belonging to the plaintiff which remain in its hands. Otherwise, the defendant is liable for the face amount of the negotiated instruments.
The general rule is that a depositary bank has no duty to monitor fiduciary accounts maintained at its business to safeguard the funds from fiduciary misappropriation. It can be assumed that the fiduciary will use funds for their proper purpose. (Home Sav. v Amoros, 233 AD2d 35, 38-39, supra.) However, there is an exception to the rule. If the depositary bank, with knowledge of the fiduciary’s diversion of trust funds, accepts the funds in payment of a personal obligation owed by the fiduciary to the bank or the bank otherwise has actual knowledge or notice that a diversion is to occur or is ongoing, the bank may be liable for the loss of the misappropriated funds.
While often a question of fact is raised with the issue of whether or not a given practice was or was not commercially reasonable (see, Phariss v Eddy, 478 NW2d 848, 851 [Iowa 1991] [applying.the same UCC provision utilized by New York]), it has been held that a bank violated commercially reasonable standards as a matter of law by failing to verify a purported power of attorney (see, Lund v Chemical Bank, 797 F Supp 259, 270, supra). Indeed, one court has held that “reasonable standards of banking practice require a depository bank to make inquiry as to the reason and authority for the deposit to a third person’s account * * * before accepting the check for deposit.” (Kelly v Central Bank & Trust Co., 794 P2d 1037, 1044, quoted by Lund v Chemical Bank, supra, 797 F Supp, at 270.)
To obtain summary judgment, the movant must establish his cause of action or defense sufficiently to warrant the direc *667 tion of judgment in his favor as a matter of law. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065.) In opposing plaintiffs cross motion for summary judgment, defendant must show facts sufficient to require a trial. Bald, conclusory allegations, even if believable, are not enough to defeat a motion for summary judgment. (Jones v Gameray, 153 AD2d 550.) In this instance, defendant Bank has the unparalleled advantage of knowing what, if any, procedure it had in effect at the time of the events in issue which could be considered commercially reasonable precautions taken to ensure that it was not negotiating a forged instrument. Yet, defendant has not tendered such information to the court. Instead, portions of deposition testimony by defendant’s employees merely show that Gussow opened an account with defendant Bank, and in doing so signed a signature card. Nothing has been presented as to any procedure in place that would be utilized if a familiar customer came to the counter with an instrument endorsed with a signature of an unfamiliar individual. Rather, defendant has effectively supported the position that it was aware of several overdrafts to Attorney Gussow’s escrow account and that there was no bank procedure for noting escrow accounts in which there might be a certain number of overdrafts within a short period of time. As to whether the defendant Bank received any proceeds from the deposits into the escrow account, there is merely a bald denial.
In contrast, plaintiff has demonstrated that defendant Bank accepted the checks for deposit at its own risk, having failed to require a signature verification or a guarantee of the endorsements on the checks. (See, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski v Questex Corp., 159 Misc 2d 126, 129, affd sub nom. Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski v Republic Natl. Bank, 160 Misc 2d 244 [finding that a bank’s negotiation of a check without a signature guarantee is done at its own risk and “constitutes prima facie negligence” in the case of a forgery, “indicati[ng] * * * the absence of good faith and adherence to reasonable acceptable commercial banking standards”].) No proof has been presented indicating that defendant Bank verified, or even attempted to verify, the endorsement as being the genuine signature of Maria Guttaudaria-Ellman, despite the fact that these checks were drawn for $35,401.77 and $33,751.77. (See, Lund v Chemical Bank, supra, 797 F Supp, at 270 [citing the Kelly court for the proposition that the large dollar amount of a check could lead to a reasonable inference that bank’s handling *668 of deposits recklessly gave substantial assistance to scheme to defraud].) It is clear that defendant bank was the party best situated to prevent the negotiation of the forged instruments and that it failed to do so.
As noted in Home Sav., “the mere transfer of trust funds between accounts at the depositary bank and/or disbursement of funds by authorized signatories of accounts at the depositary bank, are not, without more, sufficient grounds for bank liability * * * [t]here must in addition be some other circumstance implicating the bank as a participant in the diversion (i.e., acceptance of the funds in payment of a personal obligation * * *), or indicative of the bank’s neglectful countenance of an evidently intended or ongoing misappropriation.” (Home Sav. v Amoros, supra, 233 AD2d, at 40.) Such is the situation in this case. Plaintiff has shown the court considerable proof to indicate that defendant Bank had such a “neglectful countenance” towards its established relationship with Attorney Gussow. Not only has plaintiff shown that the Bank was aware of the defalcations on the escrow account, but also that on over 50 occasions during the year preceding the acceptance of Dr. Guttaudaria-Ellman’s checks, Gussow crossed out or whited out the printed words “escrow account” on each check. These irregularities, plainly visible on the face of the instruments, should have been a clear indication to the Bank that it had a duty of inquiry as to whether or not Gussow was involved in a fraud against his fiduciaries. “Facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger a duty of inquiry on the part of a depositary bank * * * and a bank’s failure to conduct a reasonable inquiry when the obligation to do so arises will result in the bank being charged with such knowledge as inquiry would have disclosed.” CHome Sav. v Amoros, supra, at 39.) Given that defendant has not come forward with anything other than bald assertions that it acted in a “commercially reasonable manner,” this court finds no genuine issue of fact requiring a trial on the issue of the commercial reasonableness of defendant Bank’s conduct. Therefore, defendant’s sixth affirmative defense is dismissed.
In its seventh and ninth affirmative defenses, defendant claims that Gussow, as a retained attorney for plaintiffs predecessor in interest, was a fiduciary as defined in General Business Law § 359-i, and that defendant acting in good faith and without actual knowledge to the contrary was entitled to assume the funds deposited by the fiduciary were funds to which *669 he was personally entitled under General Business Law § 359-Z. Alternatively defendant speaks in terms of an agency. Again, as noted above, defendant Bank had a duty of inquiry to determine the scope of any assumed agency on the part of Gus-sow, especially given that the checks were made payable to plaintiffs successor-in-interest as trustee for the benefit of Michelle Ellman. If the Bank were in the position to assume anything, it might assume that Maria Guttaudaria-Ellman was the fiduciary for these funds, and not Attorney Gussow. In fact, a simple call might have confirmed the plainly obvious words on the payee line of the checks and the fact that Gussow was not a fiduciary of the trust set up for Michelle Ellman.
Defendant’s eighth affirmative defense alleges that the Bank did not receive any benefit from either the deposit made by Gussow or its subsequent withdrawal, and that it did not retain any of the sum after its withdrawal by Gussow. As noted above, this court found sufficient proof that defendant received a benefit from its acceptance of the forged checks. Similarly noted above is this court’s view that the retention of the proceeds of the illegality is not required to find a cause of action against the defendant Bank which has negotiated a forged instrument and thus stands as an agent to the proper payee.
Regarding defendant’s tenth affirmative defense, given the causes of action alleged, neither Attorney Gussow nor his estate is a necessary party to this action. Likewise, defendant’s eleventh and final affirmative defense is dismissed, since defendant has not brought a retainer agreement to the attention of this court. Thus, the novel idea that defendant Bank is entitled to a credit to the extent of the amount that would have been paid in attorney’s fees to Gussow must be dismissed.
In view of the foregoing, defendant’s motion seeking summary judgment is denied, and plaintiffs cross motion for summary judgment is granted. Plaintiff Lawyers’ Fund for Client Protection shall have judgment against the defendant Staten Island Savings Bank in the amount of $69,153.54 with interest from March 6, 1990, together with the costs and disbursements of this action, and shall have execution therefor.