# IN THE COURT OF APPEALS OF IOWA

No. 15-1746
Filed July 27, 2016

**BRIAN LIPHARDT AND TRACY LIPHARDT,**
    Plaintiff-Appellants,

**vs.**

**SCOTT RYAN SHAW, Individually, and**
**INFINITY CONSTRUCTION, a sole proprietorship,**
    Defendant-Appellees.
_____

Appeal from the Iowa District Court for Clinton County, Mark J. Smith, Judge.

Homeowners appeal the district court's dismissal of their breach of contract claim. **AFFIRMED.**

David M. Pillers of Pillers and Richmond, Clinton, for appellants.

Scott Ryan Shaw, DeWitt, appellee pro se.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

Brian and Tracy Liphardt hired Scott Shaw, owner and sole proprietor of Infinity Construction, to renovate their home. After various problems throughout the construction, the Liphardts sued Shaw and his company[1] for breach of contract and unjust enrichment.[2] On appeal, the Liphardts claim the district court erred in finding no written contract existed and also claim the court should have ruled Shaw was unjustly enriched. Because substantial evidence exists to sustain the district court's contract finding and because the Liphardts failed to preserve error on their unjust enrichment claim, we affirm.

I.      **Facts and Prior Proceedings**

Expecting their fifth child, the Liphardts wanted to convert their existing garage into two bedrooms, an office, and a bathroom; build a new garage; and make other improvements to their home. In October 2012, they communicated their goals to Shaw, who was Brian's friend and distant cousin. In the words of the district court: "As is true in a lot of situations involving tentative agreements between friends and relatives, the parties entered into a vague proposal that involved the remodeling of an existing garage and the construction of another garage."

Shaw provided the Liphardts with a document that the Liphardts later called a "contract" and the district court eventually characterized as a "tentative bid" to cover "some of the items the Liphardts wanted to be done." The form—

---

[1] For convenience, we will refer to both Shaw, individually, and his company as "Shaw."
[2] The Liphardts raised a negligence claim in their petition, but the district court did not rule on the basis of negligence, and the Liphardts do not argue that issue on appeal. Therefore, we do not address the negligence claim.

on Shaw's letterhead—was entitled "Remodel and garage addition" and started off with Brian's contact information. The first page of the four-page document included a left-hand column listing supplies and tasks for the construction project and a right-hand column listing the estimated costs. On the first page of the form, Tracy jotted a handwritten edit showing an increased cost estimate to roof the addition on the house. The second page was entitled, "PROJECT: Brian's material list," and categorized how much of various supplies such as siding, house wrap, and facia would be needed for the project. The third page had pre-printed lines for the customers and the contractor to sign and date, but the lines were left blank. The fourth page was headed Brian's "list of materials to purchase" and itemized the tub, sink, mirrors, fans, doors, lighting, and cabinetry. The total cost estimate was $45,520.

As construction began in the fall of 2012, it became apparent the parties harbored different understandings of Shaw's role in the project. The Liphardts purchased all the materials for the project and directly paid the roofer and excavator—tasks they claim in the suit were Shaw's responsibility. Shaw did the plumbing, heating, ductwork, and electrical installations. The Liphardts knew Shaw was not licensed to perform those tasks, nor was he a licensed contractor. The Liphardts paid Shaw $7,500 in three payments.

In January 2013, the Liphardts began paying Shaw's employees directly. According to the Liphardts, they told Shaw several of the tasks remained incomplete or had flaws, but Shaw failed to address their concerns. Shaw stopped coming to the site in April 2013. The Liphardts hired other workers to complete the projects, and some of the construction remained incomplete.

In July 2014, the Liphardts filed a petition alleging they entered into a contract with Shaw and Shaw breached that contract by performing defective work and failing to complete the project. In August 2014, Shaw filed a counterclaim, alleging the Liphardts failed to compensate him fully for his work before he left the project.

Following a bench trial in September 2015, the district court found, "[a]fter work ceased, Shaw was not aware of any defective workmanship alleged by [the Liphardts]." Rather, the first notice Shaw received "was when he was served with this lawsuit." The court branded the alleged contract as "tentative agreements between friends and relatives," a "vague proposal," and a "tentative bid." The court ruled the Liphardts "failed to prove a specific contract agreement" existed.[3] The Liphardts now appeal that decision. The court also dismissed Shaw's counterclaim for failure of proof, but Shaw did not file a cross appeal. Shaw also did not file an appellee's brief.

## II.     Scope and Standard of Review

An action for a money judgment based on breach of contract is at law. *See Quigley v. Wilson*, 474 N.W.2d 277, 279 (Iowa Ct. App. 1991). Our review, accordingly, is for correction of errors at law. Iowa R. Civ. P. 6.907.

If supported by substantial evidence, "[t]he district court's findings of fact have the effect of a special verdict" and are binding on us. *NevadaCare, Inc. v.*

---

[3] The court also ruled it was "unable to determine whether the oral agreement was breached." On appeal, the Liphardts allege "the parties entered into a specific contract" as shown by "their exhibit one"—Shaw's form. They also note Shaw drafted the contract "on a form that he normally uses this very document as a contract for his customers." But on appeal the Liphardts do not challenge the court's failure to find the existence of an oral contract. Thus, we confine our analysis to whether substantial evidence supports the court's findings as to a written contract.

*Dep't of Human Servs.,* 783 N.W.2d 459, 465 (Iowa 2010). "We construe the district court's findings broadly and liberally." *Hawkeye Land Co. v. Iowa Power & Light Co.*, 497 N.W.2d 480, 483 (Iowa Ct. App. 1993). If we perceive ambiguity in the record, "we construe the findings to uphold, rather than defeat, the district court's judgment." *Id.*

### III.   Analysis

### A.  Breach of Contract

The Liphardts challenge the district court's ruling that they failed to prove the existence of a written contract with Shaw. The Liphardts claim the document on Shaw's letterhead should be considered to be a contract because it was written on the form Shaw commonly used for construction contracts, its essential terms were reasonably certain, and the parties demonstrated their mutual agreement to the form by their subsequent actions.

A party seeking to recover on a contract term has the burden to prove the contract's existence. *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 283 (Iowa 1995). The contract's terms must be sufficiently definite to allow the court to determine the conditions of performance and the duties of the parties. *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). The parties must reach a meeting of the minds, expressing mutual assent to the material terms. *Schaer v. Webster Cty.*, 644 N.W.2d 327, 338 (Iowa 2002). Iowa courts apply an objective standard to determine whether mutual assent existed by considering the language used, the situation and surrounding circumstances, and the inferences reachable by reasonable persons. *Royal Indem. Co.,* 786 N.W.2d at 846; *McCarter v. Uban*, 166 N.W.2d 910, 913 (Iowa 1969). A contract

may be formed even without the parties' signatures, so long as the parties manifest mutual assent. *Serv. Emps. Int'l v. Cedar Rapids Cmty. Sch. Dist.*, 222 N.W.2d 403, 407 (Iowa 1974).

The district court concluded Shaw's form listing estimated costs of the project supplies and labor was not sufficiently definite to determine the conditions of performance and what, if any, terms were breached. We find substantial evidence in the record supporting the district court's conclusions. The document prepared by Shaw included no narrative to assign specific responsibilities to any party. "It is axiomatic that understandable or ascertainable terms are necessary ingredients for an enforceable contract." *Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n*, 464 N.W.2d 450, 453 (Iowa 1990).

The uncertain responsibilities were reflected in Tracy's testimony. She told the court that "initially the price was supposed to include materials, but we ended up purchasing the materials ourselves." Brian agreed the responsibility for purchasing the building supplies shifted from the homeowners' original intent after reading Shaw's cost estimates.[4] In its ruling, the court noted the alleged contract "was not followed from the beginning since the plaintiffs agreed to pay for the materials themselves to save money."

---

[4] Brian Liphardt testified:

> Q. So why did you end up buying the materials? A. Because he showed up on a Sunday and said, "Let's go." . . . I said, "All right." So he took my truck, my trailer, went to Menards, and we were going through all of it and getting everything, and towards the end . . . he goes, "Well, why don't you just use your card to pay; you could save some money." "I guess, fine."
>
> Q. Was that originally your intent that you were going to . . . A. "Not at all."

Shaw testified the document he provided the Liphardts was "an estimate as to what [he] thought it would cost." Shaw emphasized he did not purchase any of the materials for the project and did not pay any of the subcontractors; the Liphardts paid all of those costs directly. Shaw told the court: "I had no problem with that. They didn't seem to have a problem with that."

While the document drafted by Shaw attempted to incorporate the scope of the remodeling project, it was not an exhaustive list. The Liphardts testified they considered additional tasks not included on the form as part of the project. While Shaw did work on some of the listed tasks, it is not clear from the form that he alone was responsible for their completion. While Shaw and the Liphardts may have reached a "tentative" agreement regarding the remodeling project, substantial evidence supports the district court's finding the Liphardts failed to show a meeting of the minds. *See Schaer*, 644 N.W.2d at 338. We affirm the district court's decision on the contract issue.[5]

## B. Unjust Enrichment

The Liphardts claim the "district court erred in not holding [Shaw] had been unjustly enriched." Issues must both be raised and decided by the district court before we will consider them on appeal. *Meier*, 641 N.W.2d at 538. When an issue is raised by a party, but the district court fails to provide a ruling, the

---

[5] Within the breach of contract claim on appeal, the Liphardts contend Shaw breached both an implied warranty that his work would be done in a workmanlike manner and an implied warranty of fitness for a particular purpose. The Liphardts failed to raise the implied warranty claims independent of the breach of contract claim in their petition, and the district court did not rule on either implied warranty claim. Therefore, we do not consider these causes of action on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 538 (Iowa 2002).

party raising the issue must "file a motion requesting a ruling in order to preserve error for appeal." *Id.* In this case, the district court did not address the unjust enrichment claim. Thereafter, the Liphardts did not file a motion seeking an expanded ruling. *See* Iowa R. Civ. P. 1.904(2). Accordingly, the Liphardts failed to preserve the issue for our review.

**AFFIRMED.**