# IN THE COURT OF APPEALS OF IOWA

No. 20-0038
Filed November 4, 2020

**INVISION ARCHITECTURE, LTD.,**
    Plaintiff-Appellee,

**vs.**

**LESLIE HOSPITALITY CONSULTING LLC,**
    Defendants-Appellants.

and

EDWIN W. LESLIE AND LK WATERLOO LLC,
    Defendants.

_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Leslie Hospitality Consulting LLC appeals from the judgment entered against it in this breach of contract case. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Paula L. Roby, Dan Childers, and Laura Moon Williams (until withdrawal) of Elderkin & Pirnie, PLC, Cedar Rapids, for appellants.

Thomas C. Verhulst of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellee.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**DOYLE, Judge.**

Edwin Leslie of Leslie Hospitality Consulting LLC[1] (Leslie Hospitality) contacted Michael Broshar of Invision Architecture, Ltd. (Invision) seeking design services for redevelopment and renovation of a downtown Waterloo hotel and convention center. After preliminary meetings with Leslie, Invision prepared a contract for services on an hourly basis. Leslie signed the agreement, and Invision then put hundreds of hours of work into the redevelopment and renovation plans. Invision sent monthly invoices to Leslie Hospitality, and after receiving no payments, Invision sued for breach of contract. Defendants[2] answered claiming there was no contract. After a bench trial, the district court determined there was a contract and Leslie Hospitality breached it. The court entered judgment for Invision and against Leslie Hospitality in the amount of $86,327.50.[3] After reviewing the evidence we affirm in part, reverse in part, and remand for an order reducing the judgment by $7415.

## I.     Facts and Prior Proceedings.

Edwin Leslie made a phone call to Invision and spoke with Michael Broshar, the managing partner. Leslie Hospitality was planning to redevelop and renovate

---

[1] As the trial court noted, "Defendant Leslie Hospitality Consulting, LLC, was referred to throughout the trial by both parties as Leslie Hospitality Consulting LLC, Leslie Hospitality Company, LLC, and Leslie Hospitality."

[2] Named defendants were, Leslie Hospitality Consulting LLC, Edwin W. Leslie, and LK Waterloo, LLC. Apparently LK Waterloo, LLC is the entity that owned the project and contracted with the City of Waterloo and the Ramada Hotel.

[3] The district court dismissed the suit against Erwin Leslie individually because there was no proof he acted in his individual capacity. The court also dismissed LK Waterloo, LLC from the suit because it was not mentioned in the contract or any other documents or correspondence and it could not be considered a party to the contract. Invision has not cross-appealed the dismissal of these defendants.

a downtown Waterloo hotel and convention center. Invision is a company that provides architecture, planning, and interior design services, mainly for commercial projects. The two agreed to meet at the hotel in August 2017. Broshar testified about their discussions.[4] According to Broshar, Leslie

> was interested in concepts for—for both the renovation of the hotel and the convention center, and specifically he did not have a defined plan but he had—he had a general idea of what he wanted to spend, and he needed to be able to understand the scope of the renovation and how it would fit within his budgets.

Invision would develop some design concepts and preliminary cost estimates for that work. Broshar understood that Leslie Hospitality would use the concepts to secure financing and then move ahead with construction following a more complete design phase. Once Leslie Hospitality obtained funding for the project, Invision would: develop design documents that further defined the scope of the work to be accomplished by the contractors, develop construction documents, help procure construction services through a bidding process, and assist in construction administration. After funding was obtained, it was anticipated Leslie Hospitality and Invision would enter into an AIA (American Institute of Architects) contract for this second phase of Invision's work.

Based on the conversation he had with Leslie, Broshar prepared an agreement for services, signed it, attached an hourly rate schedule, and emailed it to Leslie. According to Broshar, the purpose of preparing the agreement "was to have a preliminary agreement for us providing services for him until we could

---

[4] Edwin Leslie did not testify.

define the scope better and develop an AIA standard contract. . . . We were proposing to work on an hourly basis at the rates we identified in the [agreement]."

The parties met again on September 14, 2017, in Omaha. This time, Broshar; Michael Bechtel, a principal of Invision; and Mark Nevenhoven, a partner of Invision, met with Leslie. During that meeting, Broshar presented a hard copy of the agreement to Leslie. Broshar testified Leslie had requested no changes to the terms of the contract before the meeting and Leslie had a hard copy of it at the Omaha meeting. Leslie reviewed the services set forth in the agreement "and agreed that an hourly approach was the best approach given that he had not defined the total scope of the project yet but needed assistance to get documents to closing." Leslie thought the "hourly rates were a little higher than he was used to, but he understood that this was a complicated project." During the meeting, Broshar asked Leslie if he had any questions and Leslie said he did not. Broshar then asked Leslie "Are you ready to sign it?" and he said, "I am." Leslie then signed the agreement in front of the group. The parties then took a break. All of their documents were spread out on the table. At some point they were cleared away. Broshar did not know what happened to the signed document. Bechtel thought it was "[s]imply a matter of it was left on the table when we split up, and I think everyone thought somebody else grabbed it." No one from Invision left the meeting with the signed agreement. No signed agreement was produced at trial.

Bechtel testified that after the meeting Invision provided architectural design services, existing building evaluation of both the hotel and the conference center, and preliminary code services. He also testified that he worked closely with Leslie to create a detailed matrix of FF&E (Furniture, fixtures, and equipment) and OSE

(owner-supplied equipment) items. Representatives of Leslie Hospitality and Invision met in September "to align goals, responsibilities, program, and brand requirements," and in December 2017 to "review renovation concepts, provide feedback to the design team, develop project milestones, refine the project budget, and clarify brand standards." During this period of time, various emails and documents were exchanged between the parties. From September through December 2017, Invision sent Leslie Hospitality invoices at the end of each month for work done. At no time while Invision was providing its services did Leslie say they were not authorized or that there was no contract. At no time did Leslie tell Invision not to proceed with its services, nor did Leslie object to the services Invision was performing. Bechtel testified Leslie was pleased with the work Invision had done.

Sometime in December, Bechtel requested payment of the invoices. Leslie responded by email:

> Mike,
>         I did get your message today and yesterday. I do know we have some invoices that need to be cleared up. I am meeting with our bankers at the hotel on Friday of this week to review the project/details/updates etc. and will have a definitive plan on when they will fund the invoices and as well begin the next phases of construction etc.
>         I realize you would like a definitive answer[—]if you need to place all items on hold until these invoices are finalized and we have full funding completed[—]I have no objection!

Bechtel emailed back asking if a portion of the outstanding balance could be paid before securing funding from the lenders. He also asked if there was any specific documentation Leslie needed for the banks. Leslie asked for a "progress set." Bechtel sent the progress set documents to Leslie and again asked, "is there

a payment value you can offer before the end of the year?" After those email exchanges and still with no payment, Invision stopped their work for Leslie Hospitality. In March 2018, Leslie emailed Bechtel claiming he was moving forward with the project and anticipating an update from a lender, but no payments were made to Invision.

Invision sued for breach of contract to recover the amount owed on the invoices. After a bench trial, defendants moved to dismiss arguing Invision failed to prove a contract, that there was no meeting of the minds, and that Invision failed to show the terms of the alleged contract were sufficiently definite. Unpersuaded, the district court found:

> Although plaintiff was unable to produce a signed copy of the contract, plaintiff did provide an unsigned copy of this contract and uncontested testimony that an identical contract was signed by the parties. Although preliminary in nature, the contract contains sufficient detail to establish the duties and responsibilities of each party.
> . . . .
> Plaintiff performed the work shown in the invoices sent to Leslie Hospitality. Leslie Hospitality, through Edwin Leslie, encouraged further work by plaintiff, provided additional information and assured plaintiff that funding would be forthcoming.
> Based upon reasonable inferences drawn from the circumstances surrounding this transaction the court determines that a written contract did exist.
> . . . .
> Pursuant to the terms of this written contract, plaintiff was to perform that work shown on the invoices sent to Leslie Hospitality. Plaintiff did perform the work required by the contract.
> Pursuant to the terms of the contract, Leslie Hospitality was to pay plaintiff for the work performed as set forth in the schedule of hourly rates attached to the contract. Leslie Hospitality has failed to make this payment and has breached the contract.

The court entered judgment against Leslie Hospitality for $86,327.50 plus interest and costs. Leslie Hospitality now appeals.

### II.  Scope and Standard of Review

An action for a money judgment based on breach of contract is at law.  *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 179 (Iowa 2010).  Our review therefore is for correction of errors at law.  Iowa R. App. P. 6.907.  If supported by substantial evidence, "[t]he district court's findings of fact have the effect of a special verdict" and are binding on us.  *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010).  "We construe the district court's findings broadly and liberally."  *Hawkeye Land Co. v. Iowa Power & Light Co.*, 497 N.W.2d 480, 483 (Iowa Ct.App.1993).  "In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the district court's judgment."  *Id.*

### III.  Analysis

To prevail on its breach-of-contract claim, Invision must prove: (1) the existence of a contract, (2) the terms and conditions of the contract, (3) Invision performed all the terms and conditions required under the contract, (4) Leslie Hospitality breached the contract in some particular way, and (5) Invision suffered damages as a result of Leslie Hospitality's breach.  *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).

### A.  Lack of Signed Contract

Because Invision did not produce a contract signed by Leslie at trial, Leslie Hospitality argues there was insufficient evidence for the district court to find a contract.  Leslie Hospitality claims Invision failed to meet its burden to show by clear, satisfactory, and convincing evidence all of the following: (1) the former existence of the document, (2) execution of the document, (3) loss of the document, and (4) the contents of the document.  *In re Marriage of Webb*, 426

N.W.2d 402, 404 (Iowa 1988). When a document is missing, secondary evidence of the missing document's existence, execution, loss, and contents is admissible. *Id.*

Broshar and Bechtel testified that Leslie signed the contract in front of the three Invision representatives. It was left on the table when the parties took a break. When they all returned to the meeting room, all the documents on the table were cleared away at some point, and the Invision representatives picked up their bags and took a tour of some other hotel properties Leslie had rehabilitated. Broshar did not know what happened to the signed document. Bechtel thought it was "[s]imply a matter of it was left on the table when we split up, and I think everyone thought someone else grabbed it." At trial, Invision produced an unsigned copy of the contract and uncontested testimony that it was identical to the copy signed by Leslie. There was no testimony or evidence that Leslie refused to deliver the signed contract to Invision. Like the trial court, we conclude Invision carried its burden to establish the existence of the written contract.

### B. Acceptance of Offer

Leslie Hospitality asserts it did not accept Invision's offer because it did not strictly follow the method of acceptance outlined in the contract. See *First Am. Bank v. Urbandale Laser Wash, LLC*, 874 N.W.2d 650, 656 (Iowa Ct. App. 2015) ("[A]cceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever. Otherwise there is no mutual assent and therefore no contract." (citation omitted)). The contract provided: "If this is acceptable, please sign and return a copy to us." Since Leslie Hospitality did not do these two things, it argues it did not accept the offer. The evidence is undisputed that Leslie

signed the contract. There is no evidence that Leslie refused or did not intend to return the signed contract to Invision. Invision representatives mistakenly thought they had in hand a signed copy of the contract when they packed their bags and left the meeting. While it is true the signed contract was not technically delivered to Invision, we will not conflate the unique facts here into a finding that Leslie Hospitality did not accept the offer.

In any event, we find clear and convincing evidence that Leslie Hospitality accepted the offer. The offer was for Invision to provide its services at a predetermined hourly rate to develop a defined documented project concept and schematic design for the hotel and convention center renovations. After the contract was signed, Leslie Hospitality continued to engage in discussions with Invision and accepted all the work that Invision was doing and sometimes provided guidance on the work being done. Leslie Hospitality's actions reflect affirmation of the contract. Invision sent monthly invoices reflecting the hourly rates charged for each specific service performed by each specific employee. Leslie Hospitality did not object or protest. Instead, Leslie acknowledged by email on December 19, 2017, that he knew "we have some invoices that need to be cleared up," and after meeting with his bankers he "will have a definitive plan on when they will fund the invoices and as well begin the next phases of construction." Leslie Hospitality's post-signing actions evidenced acceptance of the offer.

## C. Sufficiency of Contract Terms

Leslie Hospitality argues there was no contract because the terms were not definite enough, and therefore there was no meeting of the minds.

For a contract to be valid, the parties must express mutual assent to the terms of the contract. Mutual assent is present when it is clear from the objective evidence that there has been a meeting of the minds. To meet this standard, the contract terms must be definite enough for the court to determine the duty of each party and the conditions of performance.

*Royal Indem.*, 786 N.W.2d at 846 (internal citations omitted).

Broshar drafted the agreement in letter form on Invision letterhead after Leslie contacted him and requested Invision's services for the hotel and convention center project, and after the two met at the hotel and discussed the project. Broshar emailed the agreement and fee schedule to Leslie on September 7, 2017. It was addressed to Edwin Leslie, CHA and Leslie Hospitality Company, LLC. The agreement states:

> Thank you for the opportunity to work with you on the redevelopment of the hotel and convention center. Following our meetings, we have a general understanding of your goals for the redevelopment of the properties, but hope to gain a stronger idea through our next series of meetings. The general scope of work to be accomplished is listed below. We will work with you to determine what work you would like to engage us to perform.
>
> Hotel:
>
> Redevelopment of the street level of the building, with the exception of the kitchen area. The goals are to redevelop the natatorium as the dining space for the restaurant, maintaining a separate entrance from the street; redevelopment of the current lounge area, meeting rooms and dining space to create an open lobby for registration, live performance, meeting and lounge spaces; converting the existing registration area to a coffee bar with development of adjacent exterior space for seating areas for the coffee bar; redevelopment of the north vestibule and opening walls as possible to create a more open feeling and direct guests to the registration and lobby areas. The budget allocated for construction of the restaurant dining is $1.5M with $1.75M for the balance of renovation of the street level.
>
> The upper floors of the hotel will be renovated in phases. Finishes will be updated throughout, and bathrooms will be modified

to remove bathtubs and install showers, with new plumbing fixtures. PTAC units will be replaced in phases to provide thermostat control in each room.

Exterior work will include replacement of window and louvers, treatment of the brick surfaces (possibly painting) and evaluation and possible replacement of roofs.

We are continuing our search for existing documents to create a base model for development of the project documents.

Convention Center:

The convention center needs to be evaluated to determine highest priorities for renovation / update / repair. We have previously completed an assessment of the condition of the center, and will provide that for discussion and determination of direction. Exterior repairs and treatment of the open structure with cladding and lighting have been discussed. Interior renovations may include updating of finishes and lighting, opening ceiling areas, reconfiguration of the toilet rooms to increase the fixture count, removal of the octagonal meeting room on the street level, and relocation of the sales offices from the hotel to the convention center.

We have the original documents from the convention center construction, and will use those to develop our base model for improvements.

With our understanding of the general intent in the street level areas of the hotel, we are beginning some plan development sketches of those areas. We would like to meet with you in Omaha, if possible, so that we can see the development in your property there. We are available next Thursday, September 14, if that works for your schedule.

Have you identified further if the work that you would like to accomplish and what you do not want to do in the PIP? We will develop a matrix of FFE and PIP responsibilities that we can use to clarify the work for which you want us to be responsible, and can review when we meet.

Until the project scope and responsibilities are further defined, we propose to work with you on an hourly basis. We are attaching our hourly rate schedule. Services will be invoiced monthly. Once we have better definition, we can provide a lump sum proposal for the defined work, and can execute an Owner/Architect agreement.

We understand your intent will be to use trade contractors for design/build mechanical and electrical work in the hotel. We have worked with Modus Engineering on the assessment of the convention center and propose working with them on mechanical and electrical work in the convention center. We can discuss that further as the project develops.

If this is acceptable, please sign and return a copy to us. Please contact me with any questions or concerns. Thank you again for the opportunity to work with you on this important project for downtown Waterloo.

The letter is signed by "Michael Broshar, FAIA, Partner." It shows "Hourly Billing Rates" as an attachment. Below is a signature line: "Accepted:_____Date:_____." A schedule of hourly rates was attached.

The district court found that "Although preliminary in nature, the contract contains sufficient detail to establish the duties and responsibilities of each party." We agree for the following reasons.

Leslie Hospitality suggests the parties are not specified in the contract. It is written on Invision letterhead and signed by Michael Broshar, partner of Invision. The contract was addressed to "Edwin Leslie, CHA" and "Leslie Hospitality Company, LLC." Invoices were directed to Leslie Hospitality. Minutes of meetings between representatives of Invision and Leslie Hospitality show Leslie Hospitality as owner of the project. Emails to Invision are from Edwin Leslie, CHA as President and CEO of Leslie Hospitality. While not a model of clarity, the evidence sufficiently establishes that Leslie Hospitality is a party to the contract.

As to its terms, the contract provides Invision would begin to work on a base model for redevelopment and renovation of the hotel convention center complex. It was to search for and use existing documents to begin that process. Invision was to evaluate the convention center to determine highest priorities for

renovation. Invision had begun to plan development sketches of the street level areas of the hotel. Invision was to "develop a matrix of FFE and PIP responsibilities that" it could use to clarify the work for which Leslie Hospitality wanted Invision to do. Until Leslie Hospitality further defined the project's scope and Invision's responsibilities, Leslie Hospitality was to pay Invision on an hourly basis to be billed monthly. The contract was for preliminary work by Invision as it was envisioned that once the project was better defined, the parties would enter into an AIA Owner/Architect contract with a lump-sum proposal. We conclude the contract was detailed enough as to Invision's responsibilities to develop design concepts, documents, and sketches for the project. Broshar understood that Leslie Hospitality would use the concepts to secure financing and then move ahead with construction following a more complete design phase. The district court correctly concluded that the contract was detailed enough to establish the duties and responsibilities of each party to the contract.

Leslie Hospitality also argues that "if anything the agreement demonstrated his intent to agree in the future." To be sure, the contract contemplated execution of an AIA Owner/Architect agreement at a later date, but Leslie signed the agreement for Invision to do preliminary work on an hourly basis until details of the project were developed. And, as stated above, we find this preliminary contract to contain sufficient detail to establish the duties and responsibilities of each party.

Leslie Hospitality cites *Liphardt v. Shaw*, No. 15-1746, 2016 WL 4054203 (Iowa Ct. App. July 27, 2016), in support of its argument the agreement was not definite enough to determine its terms. In *Liphardt*, our court affirmed the district court's ruling and found that the document included no narrative to assign specific

responsibilities to any party. 2016 WL 4054203, at *3. *Liphardt* differs from the case at hand.

Invision agreed to develop a defined documented project concept and schematic design to renovate the hotel and convention center so that Leslie could secure financing. Leslie was to use the design documents Invision produced to reach out to banks and obtain financing to complete the actual renovation. The agreement contained sufficient details about what Invision would do to produce a documented project concept and schematic design. The agreement included a narrative that included specific responsibilities. We therefore do not find *Liphardt* persuasive when applied to the facts.

### D. Damage Award

The district court awarded the full damages requested by Invision based on Invision's invoices to Leslie Hospitality. A portion of billed services was for work Invision performed before the signing of the written agreement on September 14, 2017. The amount billed for these services totaled $7415. Leslie Hospitality argues that if we find there was a contract, Leslie Hospitality should not be liable for work performed before the formation of the agreement and that the judgment should be reduced accordingly.

The parties first met on August 8, 2017. Invision's first invoice to Leslie Hospitality, dated September 30, 2017, includes $7415 for services performed between August 8 and September 13. Those services predate execution of the agreement. Although the agreement mentions some preparations Invision made in anticipation of the September 14 meeting, it says nothing about Leslie Hospitality paying for those efforts. And the agreement states, "We will work with you to

determine what work *you would like to engage us to perform*." (Emphasis added). It also says, "we *propose* to work with you on an hourly basis." (Emphasis added). The district court erred in including the $7415 in its award. So we must reverse and remand for an order reducing the judgment by that amount.

### IV.    Conclusion

There is clear and convincing evidence that Leslie Hospitality entered a contract with Invision. Leslie Hospitality breached the contract by not paying Invision's invoices for services provided. But the district court's award erroneously included invoiced amounts that predate the contract. We affirm in part, reverse in part, and remand for an order reducing the amount of the judgment by $7415. Costs of this appeal are taxed equally to the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**